## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

KATHLEEN D. BLAYLOCK-STRICKLAND,  )
                                         )
Plaintiff,                       )
                                         )
vs.                              )      NO. 2:03-CV-435
                                         )
INDIANA STATE LOTTERY COMMISSION, )
                                         )
Defendant.                       )

## OPINION AND ORDER

This matter is before the Court on (1) Defendant's Motion for Summary Judgment, filed on January 3, 2005, and (2) Plaintiff's Motion to Strike Portions of Defendant's Motion for Summary Judgment, filed on February 16, 2005. For the reasons set forth below, the Motion for Summary Judgment is **GRANTED**. In reaching this decision, the Court did not consider the subject facsimiles identified in Plaintiff's Motion to Strike, or the other identified material, therefore, the Motion to Strike is **DENIED AS MOOT**. The Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** Plaintiff's claim for FMLA retaliation. The Clerk is **FURTHER ORDERED** to close this case.

BACKGROUND

Plaintiff, Kathleen Blaylock-Strickland ("Strickland"), filed an amended complaint on December 14, 2004, alleging four counts against

Defendant, the Indiana State Lottery Commission (the "Lottery"). Subsequently, Plaintiff filed a joint motion to dismiss Counts I, III, and IV, and this Court approved the notice on December 15, 2004, ordering the Clerk to dismiss with prejudice Count I for violation of the Civil Rights Act of 1964, Count III arising under 42 U.S.C. section 1981, and Count IV for the state law claims of wrongful and/or constructive discharge.  The Lottery's present motion for summary judgment deals with the remaining claim in Count II, alleging violation of the Family and Medical Leave Act of 1993 ("FMLA").

Strickland was formerly employed as a telephone sales representative (a "Tel-Sell") who worked in the Lottery's Gary, Indiana, regional office.  Strickland became ill with sinusitis and she took FMLA leave.  Plaintiff returned to work on Monday, March 10, 2003, and was terminated on Friday, March 14, 2003. Plaintiff alleges she was terminated illegally in retaliation of taking FMLA leave. Defendant claims it terminated Strickland because she was insubordinate and failed to follow orders.  In her reply, Plaintiff further argues that the Lottery planned to terminate her immediately after she began her FMLA leave.  The issues in this case have been fully briefed and are ripe for adjudication.


DISCUSSION

The standards that generally govern summary judgment motions are familiar.  Pursuant to Rule 56(c) of the Federal Rules of Civil

Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *NUCOR Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under

-3-

governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (emphasis in original) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The Court recognizes that summary judgment is often inappropriate in discrimination cases because intent, therefore credibility, is often a critical issue. While the Court approaches the question of summary judgment with "special caution" in discrimination cases, "if a plaintiff fails to present evidence to create a genuine issue as to whether defendant's articulated reason for the firing is the real reason, then summary judgment will be appropriate." *Beard*, 840 F.2d at 410; *see also McMillian v. Svetanoff*, 878 F.2d 186, 188-89 (7th

Cir. 1989).


The FMLA

Plaintiff alleges that the Lottery fired her in retaliation for exercising her statutory right to medical leave pursuant to the FMLA. (Am. Compl. ¶¶ 12-13.)   Under the FMLA, eligible employees are afforded the right to twelve weeks of unpaid leave during a twelve-month period for specified reasons, including a "serious health condition." 29 U.S.C. § 2612(a)(1). The Act prohibits employers from discriminating or retaliating against employees who exercise their rights under the FMLA.   29 U.S.C. § 2615(a)(1)&(2).   In this case, there is no dispute that Strickland is an eligible employee protected by the FMLA, and that the Lottery is an employer covered by the FMLA.

The Seventh Circuit evaluates an FMLA retaliation claim the same way as other employment discrimination statutes, such as the ADA or Title VII. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004).   To prove retaliation, Strickland may rely on the direct or indirect method.   In this case, Plaintiff argues that she has established both a direct case of FMLA retaliation, and a prima facie case of discrimination under the indirect method.


Undisputed Facts

The following facts are either undisputed or reflect the evidence in the light most favorable to Plaintiff, as the party opposing the

motion for summary judgment. Strickland began in a secretarial position at the Lottery in 1996. (Pl.'s Dep., p. 11.) She was interviewed and hired by Rodney Williams ("Williams") and DeWayne Ellis ("Ellis"). (*Id.*, pp. 18-20.) At the time of Strickland's termination, Williams was the manager of the Gary regional sales office, and Ellis was the regional sales supervisor and Strickland's direct supervisor. Strickland took a medical leave for fibroid tumors while employed by the Lottery as a secretary during 1997. (Pl.'s Dep., pp. 23-24; Williams Dep., p. 101.)

After one year, Williams and Ellis recommended Strickland for a promotion, and she was promoted to Tel-Sell representative. (Pl.'s Dep., pp. 20-21.) As a Tel-Sell representative, Strickland was responsible for filling weekly ticket orders for almost 600 retailers served by the Gary, Indiana office, informing them of new games, handling new contacts, and responding to questions from current retailers. (Williams Dep., p. 20.)

At some point in time, the Lottery announced that it would transition to an automatic ticket allocation for their accounts ("ATA"). (Hendricks Dep., p. 21.) Williams testified that prior to her leave, Strickland disliked the ATA and was not onboard with the program. (Williams Dep., pp. 88-89.)

It is undisputed that Strickland became very ill in November and December, 2002, but continued to work. (Pl.'s Dep., pp. 49-50.) Strickland took two weeks of vacation time in December 2002. (Pl.'s

-6-

Dep., p. 52.)  She returned to work on January 6 and 7, 2003, but was hospitalized on January 11, 2003.  (Pl.'s Dep., pp. 52-53.) Strickland took vacation the week of January 12 through January 17, 2003. (Pl.'s Dep., p. 56.)  Then, she took FMLA leave through March 7, 2003.  (Pl.'s Ex. 8; Pl.'s Dep., p. 95.)

While Strickland was on FMLA leave, Ellis, her immediate supervisor, frequently called Plaintiff at home, asked how she was doing, questioned when she would return to work, and told Strickland he hated doing her job.  (Pl.'s Dep., pp. 64-65, 67-70, 78-79, 184.) Ellis' repeated telephone calls eventually upset Plaintiff, and she complained to Marguerite Watkins ("Watkins"), the Lottery human resources manager, and Williams. (Pl.'s Dep., p. 91.)  After February 17, 2003, Plaintiff did not receive any more calls from Ellis.  (Pl.'s Dep., p. 90.)

Plaintiff's belongings were packed into boxes while she was on FMLA leave.  (Pl.'s Dep., pp. 105, 185; Ellis Dep. p. 40-41.)  Upon her return, there were four boxes in her office, two boxes of belongings in Williams' office, and her CD player was being used in the front office.  (Pl.'s Dep., pp. 106-07.)  Plaintiff claims her evaluations that she kept in an overhead were gone, and other papers were missing from her desk.  (*Id.*, pp. 198-99.)

While Strickland was on leave, the Lottery implemented the ATA program in the Gary region.  Williams testified that before her leave and after, Strickland told them she did not agree with the ATA

program.  (Williams Dep., pp. 50-51.)

Strickland returned to work on Monday, March 10, 2003.  (Pl.'s Dep., p. 98.)  Williams was out of the office and Ellis was in and out of the office that day.  (Pl.'s Dep., pp. 98-99; Ellis Dep., pp. 46, 76.)  Upon her return, she was not aware of the implementation of the ATA program with the Gary area retailers.  (Pl.'s Dep., pp. 102, 111.)  Her first two days back, Strickland received numerous telephone calls from retailers who complained that they received tickets they had not ordered.  (Pl.'s Dep., p. 99.)  Strickland testified that the retailers asked her to find out who sent them the unordered tickets.  (Pl.'s Dep., pp. 102, 190.)

On Tuesday, March 11, 2003, near the close of business, Williams and Ellis held a meeting with Strickland.  (Williams Dep., pp. 42-43.)  At the meeting, Strickland was given a memorandum.  (Pl.'s Ex. 10; Pl.'s Dep., pp. 112-13.)  The subject-line of the memorandum from Williams and Ellis to Strickland reads "work performance."  (Pl'.s Ex. 10.)  The memorandum states that "ATA orders should be processed as instructed."  (Pl.'s Ex. 10.)  It also lists the retailers on the ATA ordering system, the new game penetration percentage, sales made in Plaintiff's absence, and concludes as follows:  "Kathleen as you can see the results in your absence were substantial.  We have confidence in you and feel that with your capabilities we as a region can even reach greater achievements."  (*Id.*)  Strickland asked her supervisors why her performance was being reviewed on her second day back, but was

not given an answer.  (Pl.'s Dep., p. 124.)

During the March 11, 2003 meeting, Strickland was informed that the retailers listed on the memo had been placed on the ATA program. (Pl.'s Dep., p. 113.)  Additionally, Strickland was told that the Lottery's corporate account representatives had obtained the appropriate consent from retailers to implement the ATA program. (Pl.'s Dep., p. 123.)  Strickland was told by Williams and Ellis "to just send the retailers tickets.  Do not ask them if they wanted them, to just send them."  (Pl.'s Dep., p. 117.)  Strickland asked for documentation, but Williams and Ellis could not provide evidence that the retailers had agreed to participate in the ATA program.  (Pl.'s Dep., 122-23.)  Williams and Ellis told Strickland she did not need a written confirmation of consent from the individual retailers because the corporate headquarters had approved the ATA program. (Pl.'s Dep., pp. 123, 145.)  Williams and Ellis told Strickland not to worry about the retailers complaining to her, but to just send the tickets whether the retailers wanted them or not.  (Pl.'s Dep., pp. 125-26.)  Strickland felt she was caught in a catch-22 situation because her bosses told her to send the tickets, but the retailers told her not to send them.  (Pl.'s Dep., p. 117.)

The next morning, March 12, 2003, Strickland called Watkins in human resources, told her about the retailers, and Watkins told Strickland that if retailers wanted to be removed from the ATA program, they had to state it in writing.  (Watkins Dep., pp. 19, 21,

-9-

23; Pl.'s Dep., p. 192.)  Watkins told Strickland to take that written information to her supervisor so that a course of action could be decided.  (Watkins Dep., p. 26.)   The Lottery believes Strickland began soliciting opposition to the ATA program from the Gary retailers, but Strickland denies this accusation.  (Pl.'s Dep., pp. 32, 55.)

Strickland compiled the written material from the retailers and met with Williams and Ellis on March 14, 2003, so that a plan of action could be decided.  (Pl.'s Dep., p. 143; Watkins Dep., p. 26.) Andrew Hendricks ("Hendricks"), the state sales manager, also attended the meeting.  During that meeting, the managers discussed how they were disappointed with Strickland, how they thought she was undermining the ATA program, and all of "the fences we've got to mend" with the retailers.  (Williams Dep., p. 73.)  According to Williams, Strickland responded, telling them that "these people don't want these tickets, and pretty much I'm not doing it." (*Id.*, p. 75.)  Hendricks also testified that the meeting was "[c]oncerning her insubordination with [Williams] and [Ellis], her not listening to them . . . ." (Hendricks Dep., p. 72-73.)  Hendricks stated that Williams and Ellis "had instructed [Strickland] to sell the automatic allocations program into stores, and she refused to do so."  (Hendricks Dep., p. 72-73.) Strickland told Hendricks directly that she refused to sell the ATA. (*Id.*)

Following the meeting, Williams, Ellis, and Hendricks discussed

the situation. (Williams Dep., p. 82.) Hendricks joined in Williams' recommendation to terminate Strickland "[f]or not listening to direction from her superiors and for the disruption that she caused with our retailers that we had gained, in my opinion, was big strides, large strides in sales and distribution of our products.  She had managed to tear that down in a matter of two days." (Hendricks Dep., p. 74.)  The Lottery director received Hendrick's recommendation, and the Lottery terminated Strickland's employment on March 14, 2003. (*Id.*, pp. 85-86.)


Strickland Cannot Establish A Direct
Case of FMLA Retaliation

    The first route of establishing an FMLA retaliation claim requires Strickland to "present direct evidence (evidence that establishes without resort to inferences from circumstantial evidence) that [she] engaged in protected activity . . . and as a result suffered the adverse employment action of which [she] complains." *Stone v. City of Indianapolis Pub. Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002).  Direct evidence "essentially requires an admission by the decision-maker that his actions where based upon the prohibited evidence." *Buie*, 366 F.3d at 503 (quoting *Rogers v. City of Chicago*, 320 F.3d 748, 750 (7th Cir. 2003)).  No such direct evidence exists in this case.

    In the absence of direct evidence, Plaintiff can seek to avoid

summary judgment by presenting enough circumstantial evidence to compose "a convincing mosaic of discrimination against the plaintiff" that allows the jury to infer intentional retaliation. *Kemerly v. Bi-County Servs., Inc.*, No. 1:00-CV-254, 2003 WL 22595802, at *6 (N.D. Ind. Oct. 7, 2003) (citing *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994)). This circumstantial evidence falls into three general types: (1) suspicious timing or ambiguous statements, (2) evidence that similarly situated employees were treated differently, or (3) evidence that the employee did not deserve termination and that the employer's reason for termination is a pretext. *Volovsek v. Wisconsin Dep't of Agric., Trade and Consumer Prot.*, 344 F.3d 680, 689-90 (7th Cir. 2003) (citing *Troupe*, 20 F.3d at 736).

Strickland tries to put together a convincing mosaic of discrimination by presenting several types of evidence. First, Plaintiff points to Ellis' phone calls to Strickland's home while she was on FMLA leave. Plaintiff claims Ellis was angry that she took leave, and started planning her termination while Strickland was out of the office. Defendant argues that calling someone at home while on leave and complaining about having to do her job is not evidence of discrimination. Moreover, Strickland never told Ellis not to call her at home, and he never talked to Plaintiff about her work performance while she was on leave. (Pl.'s Dep., pp. 82, 94.)

Second, Plaintiff believes that a memorandum dated February 14,

-12-

2003, prepared by Ellis and addressed to Strickland is evidence of discrimination.  The memorandum is unsigned and it appears from the record that it was never given to Strickland.  (Pl.'s Ex. 9.) Plaintiff claims Ellis wrote this memorandum because Strickland did not return to work after his telephone calls, and that the memorandum threatens to suspend and terminate Strickland if she did not return to work.  Defendant contends that the memorandum does not threaten to fire or discipline Plaintiff for taking FMLA leave.  The text of the February 14, 2003, memorandum speaks for itself.  The first portion discusses how Strickland's work day is scheduled to start at 7 a.m., then it describes ATA orders, game penetration percentages, and call off procedures for Strickland to follow should she not be attending work on a given day.  The memorandum also sets forth an instance in which Ellis apparently believed the Lottery was not properly advised of Plaintiff's absence during the beginning of Plaintiff's illness. The memorandum concludes as follows:

> Our concern first was for our [sic.] health and second what steps as managers did we need to take for proper coverage.  You must improve on your start times and give the Lottery a full 7 ½ hour workday.  If you do not rectify these issues and turn your work performance around you could receive time off without pay.  Continued behavior patterns in line with the aforementioned problems can and will result in suspension and or termination with the Hoosier Lottery.

(Pl.'s Ex. 9.)

Third, Plaintiff points to the treatment of Strickland's

belongings as evidence of discrimination.  Plaintiff's belongings were packed into boxes while she was on FMLA leave.  She was missing papers, including evaluations, upon her return.  According to Defendant, Strickland's personal belongings were moved and secured while a temporary employee, Miguel Tova, used Strickland's office during her leave.  (Ellis Dep., pp. 40-41.)

Finally, Plaintiff posits that discrimination can be inferred by the timing of her termination.  Strickland was fired on the fifth day after her return from leave.  Citing to *Buie*, the Lottery claims that being fired shortly after returning from FMLA leave is not, in itself, sufficient to establish direct evidence.  *See Buie*, 366 F.3d at 506 (quoting *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1034 (7th Cir. 1999)) ("[s]uspicious timing . . . [and] temporal sequence analysis is not a magical formula which results in a finding of discriminatory cause.  By itself, temporal proximity would not normally create an issue of material facts to causation.").

Even considering the evidence put forth by Plaintiff as a whole, Strickland has failed to construct a convincing mosaic.  Ellis' phone calls to Plaintiff while she was at home on leave do not imply that the Lottery intended to deny her leave, or to retaliate against her upon her return.  As testified to by Ellis, he did want Strickland to return, and he did not like covering her duties while she was on leave.  Although Ellis' frequent phone calls may have been in bad taste, nothing about the content of the calls implies discrimination.

-14-

If anything, Ellis' actions show that Strickland was a valued employee.

The February 14, 2003 draft memorandum from Ellis to Strickland also is not evidence of retaliation.  The text of the memorandum speaks for itself, but the text does not support Plaintiff's interpretation that Strickland was written up because she took leave. (Pl.'s Br. in Opp. to Def.'s Mot. for Summ. J., p. 16.)  Nowhere in the draft memorandum does it state that the Lottery was going to fire Strickland for taking leave, nor does it threaten her for taking leave.  Rather, it sets forth the appropriate call off procedure prior to and during the time Plaintiff was on leave.  Nothing about requiring Strickland to follow procedures raises an inference of discrimination.

Plaintiff also has not shown that securing Strickland's belongings while she was absent from the office supports an inference of intentional discrimination.  The Lottery produced a valid reason for its actions - to secure Strickland's personal belongings while a temporary employee was housed in her office.

Finally, the timing of Plaintiff's termination five days after returning from FMLA leave is insufficient to create a triable issue of retaliation.  *See Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 895 (7th Cir. 2001) (plaintiff "needs more than a coincidence of timing to create a reasonable inference of retaliation"); *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th

-15-

Cir. 2000) ("The mere fact that one event preceded another does nothing to prove that the first event caused the second.").

Viewing the facts in the light most favorable to Plaintiff, she has not produced direct or circumstantial evidence from which a rational trier of fact could reasonably infer that the Lottery made the decision to terminate her because she exercised her rights under the FMLA. *Marshall v. Am. Hosp. Ass'n*, 157 F.3d 520, 525 (7th Cir. 1998). Therefore, Strickland has failed to establish a case of FMLA discrimination under the direct method of proof.

Strickland Cannot Establish A Prima Facie
Case of FMLA Retaliation Under the Indirect Method

To establish a prima facie case of discrimination under the indirect method of proof, Strickland must come forward with evidence tending to show: (1) she engaged in statutorily protected activity; (2) she was performing her job according to her employer's legitimate expectations; (3) despite meeting those expectations, she suffered a materially adverse employment action; and (4) she was treated worse than a similarly situated employee who did not engage in statutorily protected activity. *Buie*, 366 F.3d at 503; *Stone*, 281 F.3d at 642. "Failure to satisfy any one element of the prima facie case dooms an employee's retaliation claim." *Mitchell v. Dutchmen Mfg., Inc.*, 389 F.3d 746, 750 (7th Cir. 2004) (citing *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 560 (7th Cir. 2004)).

-16-

If Plaintiff establishes a prima facie case, the burden then shifts to Defendant to articulate a nondiscriminatory reason for the termination. *Buie*, 366 F.3d at 503.  If Defendant makes this showing, the burden then shifts back to Plaintiff to prove by a preponderance of the evidence that Defendant's proffered reasons were a pretext for intentional discrimination. *Id.*

It is undisputed that Plaintiff was engaging in a statutorily protected activity when she took FMLA leave, and it is undisputed that she suffered a materially adverse employment action when she was terminated on March 14, 2003.[1]  It is the second and fourth elements of the prima facie case which are at issue.

The second prong of the prima facie case provides that the Plaintiff must demonstrate that she was terminated "even though [s]he was performing h[er] job in a satisfactory manner." *Buie*, 366 F.3d at 503 (quoting *Rogers*, 320 F.3d at 754-55).  Strickland points out

---

[1] Strickland also contends that she suffered tangible employment actions when Ellis "wrote her up" in the draft memorandum dated February 14, 2003, when the Lottery boxed her belongings and cleaned out her drawers, when the Lottery had a performance meeting with Strickland one day after she returned from leave, and when Plaintiff was given what she characterizes as a negative work performance memorandum.  (Pl.'s Br. in Opp. to Def.'s Mot. for Summ. J., pp. 19-21.)  These actions, even taken in the light most favorable to Plaintiff, do not constitute material adverse employment actions. *See, e.g., Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002) (finding harassing conduct must be severe or pervasive before it can be considered an adverse employment action); *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) ("[N]ot everything that makes an employee unhappy is an actionable adverse action.").

that prior to taking her FMLA leave in 2003, she received good evaluations, worked hard, received two awards, and was never reprimanded. (Ellis Dep., pp. 20-21; Hendricks Dep., pp. 15-16; Pl.'s Dep., pp. 40, 186.)  No one disputes that, prior to the implementation of the ATA, Strickland performed her job satisfactorily.  But the Lottery claims it terminated Strickland based upon her actions taken on March 10, 2003, through March 14, 2003, including her refusal to follow directives and acts of subordination.  Thus the proper time frame to consider Strickland's performance is from March 10 – March 14, 2003.

There is uncontroverted testimony that Strickland refused to follow orders that week.  Although Strickland may have felt caught in a catch-22 situation between her employer and the independent retailers, her supervisors, Williams and Ellis, clearly told her she did not need written confirmation, and to "[j]ust send the retailers the tickets whether they want them or not."  (Pl.'s Dep., p. 126.) Even Strickland acknowledges that, in such a situation, it was appropriate for her to follow the instructions of her supervisors. (Pl.'s Dep., p. 117.)  Plaintiff's claim that she was just following Watkins' instructions when she told retailers to put their complaints in writing is really beside the point.  Strickland refused to follow the instructions of her direct supervisors, and even Plaintiff testified "I admitted that I made a mistake." (Pl.'s Dep., p. 168.)

As such, Strickland has failed to demonstrate a genuine issue of

material fact regarding whether she was performing her job in a satisfactory manner. *Buie*, 366 F.3d at 503; *see also Cagle v. Finishmaster, Inc.*, No. 1:03-CV-00265-JDT-WT, 2004 WL 3130622, at *11 (S.D. Ind. Dec. 23, 2004) (granting summary judgment for defendant where defendant "presented uncontroverted evidence of lawful reasons for [plaintiff's] discharge, including insubordination."). Plaintiff has failed to establish the second prong of her prima facie case.

Plaintiff has also failed to present evidence to establish the fourth prong of a prima facie case - that other similarly situated employees who did not take FMLA leave were not also subjected to termination. *See Buie*, 366 F.3d at 503; *Mitchell*, 389 F.3d at 750 (affirming summary judgment where plaintiff failed to present any evidence to establish other similarly situated employees who did not take leave were not also subjected to adverse employment action). Strickland claims that she was treated less favorable because no other employee had their belongings packed up during a leave of absence. This is not the relevant inquiry. Rather, Plaintiff must show that after taking her FMLA leave, only she, and not any similarly situated employee who did not take leave, was subjected to termination. *Buie*, 366 F.3d at 503 (citing *Rogers*, 320 F.3d at 754-44). Strickland puts forth no evidence of a similarly situated employee who was treated differently. Plaintiff "must show that there is someone who is directly comparable to her in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (citations

omitted).   Here, Plaintiff concedes that she was the only Tel-Sell representative at the Lottery's Gary office, and she fails to produce any evidence of similarly situated employees.

In sum, Strickland has failed to present sufficient evidence to raise a question of fact regarding whether the Lottery treated similarly situated employees that did not exercise their rights under the FMLA more favorable, and she has failed to present sufficient evidence that she had satisfactory job performance.   Consequently, Strickland has failed to sustain the initial burden of establishing a prima facie case of retaliatory discharge.

Even assuming, *arguendo*, that Strickland could make out a prima facie case of FMLA retaliation, the Lottery has offered a valid, noninvidious reason for her termination - Strickland refused to follow her supervisors' directives.

Once the Lottery presents a legitimate, noninvidous reason for the termination, the burden shifts back to Plaintiff to show that the proffered reason is pretextual.   *Buie*, 366 F.3d at 503. Strickland has not shown that the Lottery's proffered reason for her termination was a pretext for unlawful discrimination.   Absent direct evidence of pretext (*e.g.*, an admission), Strickland may show pretext by presenting evidence "tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge."   *Testerman v. EDS Technical Prods. Corp.*, 98 F. 3d 297,

303 (7th Cir. 1996) (citing *Wolf v. Buss (America), Inc.*, 77 F.3d 914, 919 (7th Cir. 1996)).  Pretext requires more than a showing that the decision was "mistaken, ill considered or foolish, so long as [the employer] honestly believed those reasons, pretext has not been shown."  *Nawrot v. CPC Int'l*, 277 F.3d 896, 906 (7th Cir. 2002) (quoting *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000)); *see also Crim v. Bd. of Educ. of Cairo Sch. Dist. No. 1*, 147 F.3d 535, 541 (7th Cir. 1998) (quotation omitted) ("We do not ask whether the reason for the [corrective action] was a correct business judgment but whether the decisionmakers honestly acted on that reason.").

Strickland argues that the sales figures for the weeks she was working were stronger than the sales during the weeks she was on FMLA leave, therefore the performance meeting upon her return was a hoax. The Lottery disputes this conclusion, but this Court refuses to sit as a "super-personnel department" that reexamines a business decision and reviews the propriety of that decision. *See Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000).  Similarly, whether Strickland truly damaged the Lottery's relationships with its retailers or whether she actually solicited facsimiles from the retailers requesting they discontinue the ATA is irrelevant.  So long as the Lottery truly believed that Strickland was not performing her job satisfactorily, this is a legitimate and legal reason for her termination.  Strickland has not presented any evidence that the Lottery was lying when it terminated her for performance reasons.

Strickland also complains that she received no progressive discipline. However, this fact does not necessarily raise an inference of retaliation. *See Anderson v. Stauffer Chem. Co.*, 965 F.2d 397, 402-03 (7th Cir. 1992) (holding employer with progressive discipline policy was not required to use it). In this case, Plaintiff provides no evidence that the Lottery even possessed a progressive discipline program. During her employment with the Lottery, Strickland was an "at-will" employee. (Williams Dep., p. 83.) Under Indiana law, employees of the state lottery commission "serve at the pleasure of the director" and are subject to dismissal at the discretion of the director. I.C. § 4-30-3-14.

In sum, Strickland has not demonstrated pretext in the Lottery's proffered legitimate, nondiscriminatory reason for her termination. Therefore, Plaintiff's FMLA discrimination claim cannot survive summary judgment. In light of this finding, the Court declines to address the Lottery's common actor presumption argument.


CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED.** Plaintiff's Motion to Strike Portions of Defendant's Motion for Summary Judgment is **DENIED AS MOOT.** The Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** Plaintiff's claim for FMLA retaliation. The Clerk is **FURTHER ORDERED** to close this case.

DATED:   April 8, 2005            S/RUDY LOZANO, Judge
                                    United States District Court